\* PENNSYLVANIA CO. V. THEODORE N. HICKLEY.

1. NEGLIGENCE TO SEND TRAIN WITHOUT SUFFICIENT EMPLOYEES.

A railroad company in sending out a train, though not a regular one, without a sufficient force of trainmen (without conductor or brakeman in case at bar) to assist in giving signals for the protection of employees engaged in switching, and coupling and uncoupling cars, is guilty of negligence.

2. ENGINEER SUPERIOR OF FIREMAN, WHEN.

An engineer who is sent out with a fireman and a force of section men, but without a conductor or brakeman, and who has charge of the movements of the train, receiving his orders from the superintendent and train dispatcher, is the superior of the fireman, and where the latter, being directed to couple a car, and being inexperienced in such work, is injured by the negligence of the engineer in moving the train, the railway company is liable.

3. RULE OF RAILWAY AS TO ENGINEERS AND FIREMEN NOT APPLICABLE.

A rule of the railroad company to the effect that the only thing a fireman is bound to do, as between himself and the engineer, is to obey the latter in the proper use of fuel and in the matter of firing, and that in all other things the engineer and the fireman are independent of each other, if applicable to a train equipped with a sufficient force to properly manage it, is not applicable to a train sent out, in charge of an engineer, without conductor or brakemen.

4. CONTRIBUTORY NEGLIGENCE AND ASSUMPTION OF RISK.

The question whether a fireman was guilty of negligence in or assumed the danger of going out with a train in charge of an engineer, without conductor or brakemen, is, ordinarily, a question for the jury. To charge such fireman with negligence or assumption of risk, under such circumstances, which would defeat his right to recover for injuries, it must appear that he knew, when he went out, that the train could not be safely handled without a conductor and brakemen.

5. MORTALITY TABLES AS BEARING UPON PERSONAL INJURY.

Evidence, in the nature of tables of a life insurance company, derived from experience of about fifty years, showing probable duration of life is not restricted to use in actions involving death; such evidence is competent in an action for personal injuries, as bearing upon plaintiff's financial loss and pecuniary damages by diminution of earning capacity.

HEARD ON ERROR.

*E. W. Tolerton*, for plaintiff in error.

*Hamilton & Ford*, for defendant in error.

HAYNES, J. (Orally).

This is an action brought by the plaintiff company for the purpose of reversing the judgment of the court of common pleas, it being an action for damages for a personal injury.

The plaintiff in his petition, which was filed on April 5, 1890, sets up the organization of the defendant company, and says that on July 13, 1886, the plaintiff was, and for a long time prior thereto had been a fireman in the employ of the defendant company on one of its locomotive engines engaged in the operation of said railroad. He then says: " On

---

\* Settled and dismissed in Supreme Court by plaintiff in error, June 7, 1892.

said date and for a long time prior thereto, the crew, or force of men, for an engine, by the usage of the said company and the requirements of the work to be performed in the said business, consisted of a conductor, engineer, fireman and two switchmen or brakemen." That on the morning of July 13, " the engineer, then in charge of the engine on which plaintiff was employed and belonging to and under the control of the defendant, received orders and directions, from the superintendent of said road, or other employees thereof, superior in authority over said engineer and the plaintiff, and whose orders in that behalf it was the duty of the said engineer and plaintiff to obey, to the effect that said engineer and engine should work extra between the stations of Walbridge and Gibsonburg, on the line of the defendant's said railroad, with flags out against all trains until they come in sight, and that all trains would look out carefully for them until they came in sight. Doing extra work between the stations aforesaid, on defendant's said road as embraced and directed by the aforesaid order, consisted in the movement of said engine from place to place. picking up and leaving freight cars between said limits, coupling, uncoupling and switching cars, and such other work as the business of the defendant required that day, and required the aid and services of a full crew of hands to man the same and do said work. The defendant well knowing the premises, carelessly and negligently omitted and failed to provide sufficient help and assistance to do such work on said day, and excepting the engineer and the plaintiff, set the remainder of the crew of hands, belonging to said engine, at other work and thereby prevented their going with said engine, and they did not go."

He then sets up that they started out to perform their duties as they were ordered, and he says that the engine and the work to be done by it was wholly without a conductor, or other person, except the said engineer, to take charge of and direct the same, and by reason of the premises, said engine and the plaintiff and all the work to be performed by it, were placed under the charge and control of said engineer, who thereupon took charge of the same and directed and controlled the same in the capacity of a conductor and director of said work, and all orders and directions of the defendant, as to doing said work, were communicated to and received by said engineer. Plaintiff says that said engineer was then and thereby, by the defendant, placed superior in authority over the plaintiff during said day, whose orders and directions it then and there became and was the duty of the plaintiff to obey, and he received all his orders and directions from said engineer and none else.

While doing said work in pursuance of said order, on said July 13th, and while the same was under the charge and control of said engineer, at a point about two miles and a half west of Gibsonburg, on the defendant road, said engine was standing on the main track attached to a string of six gondola cars, which had then been loaded with railroad ties, said engine facing west. In the rear of said six cars and standing on the same track, were four other similar cars standing some six or eight feet distant from the other cars which were attached to the engine. About noon of said day, and while said cars were so standing, said engineer, so placed in charge of said work by the defendant, decided to take said cars to the station of Woodville, next west, and set them on a side track there, and thereupon said engineer, whose orders and direct-

ions in that behalf it was the duty of plaintiff to obey, directed the plaintiff to go to the opening between said strings of cars and make the coupling between them, while he with the engine shoved said six cars back against the others, to enable plaintiff to make the coupling, which order plaintiff proceeded to obey and went between said cars for the purpose of making said coupling, and with the exercise of all reasonable care on his part was proceeding to make the same, when said engine with cars attached was, without warning or notice by said engineer, carelessly and negligently and with great force and violence, suddenly forced back, bringing said cars suddenly together, and without ability on the part of plaintiff to prevent it, or escape, plaintiff's right arm was caught between said cars and crushed at the elbow, as hereinafter stated.

Plaintiff says that the work of coupling cars or doing other work of a brakeman or switchman was no part of his employment by the defendant; that he was never employed by the defendant for such work, but solely as a fireman on engines; at the time he was so ordered by his said superior, and when he attempted to make said coupling, he was wholly without experience in said work and unskilled and without knowledge as to the way of doing the same or the manner of avoiding the danger and hazard attending such work, as defendant well knew. Plaintiff says that the work of coupling cars is and was much more hazardous and attended with much greater danger than the work of a fireman, which plaintiff was employed by defendant to do, but which plaintiff, at the time he undertook to make said coupling, did not appreciate and understand, and with the knowledge at his command and want of experience he could, and did not know, which was well known to defendant.

Plaintiff says that when his arm was caught between said cars as hereinbefore described, it was crushed to such extent above and below the elbow as to require amputation, and it was soon thereafter amputated near the shoulder. That by reason of said injury he has suffered from the loss of his right arm; he was confined to his home some five or six weeks, suffered great bodily pain, anguish and unrest in consequence thereof, and has expended a large amount for surgical attendance, nursing and medicine in being treated for said injury, to-wit, the sum of one hundred dollars. Plaintiff says he sustained the injury aforesaid without any fault on his part and through the negligence of the defendant in failing and omitting to furnish sufficient hands and help to do the work of said engine, and in sending the two switchmen and the conductor that belonged with said engine to do other work at Toledo instead of allowing and requiring them to go with said engine, and through the negligence of said defendant through its said engineer in ordering and directing plaintiff to make said coupling and in sending said cars by said engine back on to plaintiff in a reckless and careless manner as herein set forth, and that he has sustained damages by reason of the premises in the sum of thirty thousand dollars for which amount he asks judgment against the defendant."

To that, the defendant answers, admitting that it was a corporation and was engaged in operating the line of railroad which is charged in the petition; and it admits that on July 13, 1886, the plaintiff was, and for a long time prior thereto had been, in the employ of the said defendant, and denying every other allegation in the petition. "For a second defense, the said defendant says that the injuries complained of by the

said plaintiff were caused by his own negligence and carelessness, and not that of the defendant. For a third defense the said defendant says, that if the injuries complained of by the plaintiff were caused by the negligence of any other person or persons than himself, it was the negligence and carelessness of the fellow servants of the said plaintiff, and not the negligence of the said defendant."

To this there was a reply denying the contributory negligence and the clause in regard to the fellow servant.

Thereupon the case went to the jury and a verdict was rendered for $8,000, and there was ordered by the court below a remittitur of $2,600, which was made, and thereafter the judgment was affirmed.

A motion for a new trial was made, upon the grounds:

(1) That said verdict was not sustained by sufficient evidence.

(2) That said verdict was contrary to law.

(3) For errors of law occurring at the trial and excepted to by said defendant.

(4) That the damages rendered by said verdict are excessive in amount, appearing to have been given under the influence of passion or prejudice."

The evidence offered by the parties shows that the plaintiff was a fireman on engine No. 57, and that on the night before, at eleven o'clock, it had left Mansfield with the regular fast freight train, I believe, and arrived at Toledo about six o'clock in the morning of July 13, 1886; and when they arrived there they received an order, which is substantially as follows: "Order No. 6, Engine 57, No. 14 engine house P. C. Engine will run extra from engine house to Walbridge ahead of No. 14. J. S. Morris, Superintendent, July 13, 1886. Issued at 6.24 A. M.," and that was received by the engineer. It seems they soon after got another order, like this: "All trains west Tiffin, all trains east, and Engine 57 Walbridge. Engine 57 will work extra between Walbridge and Gibsonburg today until six o'clock P. M. with flag out against all trains until they come in sight. All trains will look out carefully for them." Signed "J. S. Morris, Superintendent." In pursuance of that order, the engineer and fireman of this locomotive, as soon as they had their breakfast, took their train and started for Walbridge. They took with them Denman, who was a section foreman, and one man, and on arriving at Walbridge they received further orders. These orders were given generally to the engineer, and perhaps to the section man there. They were ordered to run to and take on another section of men; which was done, and then they ran to Woodville, to the siding, and took on ten gondola cars, and then ran down to Gibsonburg and went into the side track for the purpose of awaiting the arrival of the morning passenger trains, both east and west, and also a freight train. When they had passed, they pulled out over that side track and went up to Sugar creek, where there were ties to be loaded, along the line of the road, and stopped on the main track and took on a lot of ties; they were to take there ten carloads of ties, and it was at this point where the accident occurred.

The testimony of the fireman is, that when they got to Woodville he started, as was his duty, perhaps, to open the side track—turn the switch; that Denman, the foreman, who also, it seems had a key to the switches, was a little ahead of him, and he opened the switch and they went in there, and when they got up to the gondola cars Denman con-

nected them, and when they were about to start the switches were turned, under the order of the engineer. The fireman went back over the train and turned the brakes, and in that way they went down to Gibsonburg. When they got to Gibsonburg, he started also to open that switch, but the switch was opened by Denman before he could get there, and I think when they came out he closed the switch and got upon the car. That, however, was a part of his duty. When they came up to where the ties were the foreman said that he wanted to disconnect three cars so that they could work to better advantage, and Denman made the uncoupling and the train was started and ran a few feet, and they staid there working about two hours and a half. During that time the men, under the direction of the foreman, were loading the ties. The engineer was about his engine, and the fireman was engaged in cleaning up the engine, working at the headlight and doing work of that kind, until noon. It seems that then the engineer and fireman took their dinner. Just the time they did that does not appear, but I suppose at noon. About half-past twelve or a quarter to one, the foreman, Denman, called his men, and they started to eat their dinner, which consisted of their taking their pails and climbing upon the bank and commencing to eat. Denman was seated in front of the opening in the train. It appears that the only man who had attempted to work about brakes, other than the fireman, was Denman. He testifies that he had been a brakeman a good many years, and that he had been in the habit of setting brakes. While the section men and the foreman and his men were eating their dinners, the engineer and fireman having concluded their meal, were standing in the vicinity of the cars it being then about twenty minutes to one. The engineer testifies that a train was due at Gibsonburg at 1:15, and he claims that he said to the fireman: "We had better couple the cars together and go up to Woodville." The fireman states, however, that he said to him: "You go in and couple these cars, and I will back down and we will take the train to Woodville and leave these cars on the side track so they will be out of the way, and come back and take the others." At any rate, the engineer started for his engine, and the fireman gave the signal to back, and as the cars started to back the fireman went in to make the coupling, and he says it was the first coupling he had ever undertaken to make. According to the testimony of the fireman, the cars were coming back quite rapidly, he thinks at the rate of three miles an hour; at any rate they seemed to him to be coming back rapidly. He having set the pin, it seems, dropped the link and started to get out of the way, started to pull his hand away—his arm—and in doing this, before he was able to get it away, the cars came together and his arm was caught by the bumpers and was injured in the manner stated. The arm was nearly taken off and hung by some shreds and was supported by his coat. It was bleeding, but he had nerve enough to go to the engine before he had any help. He was taken to Gibsonburg and his arm was attended to.

Now, under this state of facts, the question is: whether the plaintiff company here, is liable.

It is contended here very earnestly on behalf of the railroad company that there is no evidence here, whatever, to make the company liable. It will be noticed that the grounds of negligence set forth by the plaintiff's petition, are: First, that the locomotive was sent out to perform this work without any regular brakeman; second, that the engineer backed

his train more rapidly than he ought; that he backed it up carelessly, negligently, and that the plaintiff was thereby caught; third, that he had ordered the fireman to go in and make a coupling knowing that he had had no experience, and that that was a ground of negligence.

The contention of the defendant below is: First, that the fireman was guilty of contributory negligence; second, that if any negligence occurred, it occurred by the act of a co-employe; in other words, that the engineer and fireman were co-servants employed by the same company, and that, under well established rules of law, there was no liability on the part of the company for any negligence that might occur on the part of the engineer. The testimony shows, on behalf of the plaintiff,— and it is not contradicted by any evidence on behalf of the defendant below, that in the operation, not only of a freight train, but of construction trains, it is customary to have a conductor and one or more brake-men, for the purpose of managing the trains. It will be observed in this case that the engineer had gone out with the fireman and section men, had gone out with eight other men, and the question arises: who was responsible for the running of the train? Who was in charge of the train? The solution of that question will, perhaps, have considerable to do with the liability of the company. Now we are clearly of the opinion in this case, from the evidence, that the engineer of that locomotive had charge of the running of the train, of the movements of the train. He received his orders from the superintendent, or from the train dispatcher, as to the points he was to make and where he was to stop, and had his general orders to look out for all trains and cars, and by his time-tables, he was able to know when they were due. It does not appear that the section foreman had any control whatever over the fireman. The only thing he did, when he arrived at the point where the ties were lying, was to suggest to the engineer the fact that he wanted the cars parted there, as, he testifies, that he could load the ties with more facility and work his men more advantageously, and thereupon he drew the pin and left the cars standing in the position in which he wanted them in reference to the ties. All other movements of the train were to be regulated, and were regulated in fact by the engineer. So that, in the absence of contention, it is quite apparent to us that the engineer stood, so far as the movements of the train were concerned, in the position of a representative of the company the same as a conductor would have been if there had been a conductor present aiding in the movement of the train.

The next question that seemed to arise was the relation of the engineer and the fireman. It seemed to be assumed by counsel in argument, that, as between the engineer and the fireman, they were co-servants and stood in the same relation that other co-servants would; but it rather seemed to us, upon a discussion of the question, that there might be some invasion of that rule; indeed it seemed to us that the fireman might probably be said to be under the direction and control of the engineer, his duties would naturally bring him to that position. We thought first that there was some decision of the Supreme Court of this state upon that question, but upon commencing to look for that, we do not find any. Such text-books as we had were quite meager upon that question. We did, however, find a case decided by the superior court of Cincinnati, this state, in which Gholson, Hoadly, Spencer and Storer were the judges, a recognized able court; and the case I refer to is that of Jenkins v. Little Miami Railroad Co., 2 D., 49 (12 Re.).

Pennsylvania Co. v. Hickley.

Gholson says: "This action is brought to recover damages sustained by an alleged act of negligence on the part of an engineer in the employment of the defendant. The plaintiff was a fireman also in the employment of defendant, at the time he sustained the injury, which was the loss of an arm, while engaged in what he claimed to be an act of duty, done under the control and direction of the engineer, a superior officer.

"The first question which arises is, whether the case by the allegations and proof, is brought within the principle of the doctrine established in the state, by the case of Little Miami Railroad Co. v. Stevens, 20 Ohio, 415. We think that it very clearly is. The plaintiff was under the direction and control of the engineer, and the negligence alleged is that of the engineer. It consisted, if at all, in an act over which the plaintiff had no control, and in the doing of which he cannot be said to have participated.

"The next question is, whether the plaintiff himself was in fault. It appears, we think, that he was engaged in doing that which he had before been ordered to do, and at a time and place, which under the circumstances made it a proper discharge of duty on his part. At least such a conclusion may be properly and fairly drawn from the evidence. This makes a *prima facie* case of not being in fault.

"The remaining question is, whether there was negligence in the engineer. And if the plaintiff, at the time and under the circumstances he received the injury, was in the discharge of his duty, then it can scarcely be doubted but that the engineer in moving the train without notice or signal, to the certain peril of the plaintiff, was guilty of negligence.

"It is, therefore, upon the question whether the plaintiff was himself at fault, that the defense has mainly turned. Certain acts or parts of the conduct of the plaintiff have been selected, and it is strenuously claimed that these constitute such negligence as to preclude the plaintiff from a recovery. The court at special term was requested so to direct the jury, and its refusal is now claimed to be error. When these charges were asked, the court, refusing them in the form they were proposed, modified them by bringing before the jury certain inferences to be drawn from the evidence, and which, if drawn, would alter the conclusion.

"Without inquiring whether the defendant could justly complain of the modifications made by the court, we think it sufficient answer to say, that the charges asked were in themselves improper. On the one side it is claimed that there was negligence on the part of the engineer, and on the other that there was negligence on the part of the plaintiff. The question of negligence was the one involved. Would it have been proper for the court, taking certain of the facts apart from the others, and the surrounding circumstances, such facts not having in law any conclusive and definite effect, to say to the jury that they did constitute negligence? We think in such case as the present, negligence, if not a question of fact for the jury, is at least a mixed question of law and fact which it would have been improper to take from the jury by the charges which were asked. It would have been very proper for the court to direct the jury as to the premises from which they might draw their conclusion on the question of negligence, but they ought to have been left to say under all the circumstances, whether the negligence alleged was established."

. I have read more than I intended, but it disposes of some questions which are raised further on, in the charge of the court; so that so far as that court is concerned, they hold that the relation of principal and subordinate may exist between an engineer and a fireman. Some light is thrown upon that question by a couple of decisions in this state : one is Railroad Co. v. Lewis, 33 Ohio St., 196; also the case of Railroad Co. v. Ranney, 37 Ohio St., 665. In those cases the brakeman of a train was injured by what was claimed to have been negligence on the part of the engineer, in giving certain signals and then immediately starting up his train, the general orders being, in the general rules, that the engineer was to give, as a signal for the switchman either to set or to let the brakes off, a certain number of blasts of the locomotive whistle. He had, in each case, given the signal, and in each case had immediately started up the engine, and in each case the result had been that the brakeman had been injured; and in each case suit was brought, claiming that the engineer was an officer superior to the brakeman, and that therefore the company was liable. Now, in the discussion of those questions in each case—the first one was before the Supreme Court commission—and three judges held that it was not a case in which he was acting under the orders of a superior; that he was simply obeying the orders of a common master; although the signals were given under the rule by the engineer, but that it was not, in the sense of law, an order of the engineer such as would make him an officer superior to the brakeman. To that decision two of the judges dissented, Scott and Ashburn.

In Railroad Company v. Ranney, *supra*, a majority of the court held that the engineer was simply a co-servant with the brakeman. But to that decision Judge Okey delivered a dissenting opinion, in which Judge White concurred; so that, as between a brakeman and an engineer, their relations are very much different from those of a fireman and engineer. The Supreme Court by a single majority in the case, held that the engineer was a co-servant. We think, under the decisions, and we think on principle, taking the relations of these parties to each other, that the true rule of law is, as a general rule, that the engineer is, as to the fireman, a superior officer, and that the fireman, as a general rule, is bound to obey the orders of the engineer. In Railroad Co. v. Lewis, *supra*, the Pittsburgh & Ft. Wayne Railroad Company was the defendant company. The rule of the company as laid down at that time provided that the fireman should obey the orders of the engineer. That road was run then, I believe, by this same company, the Pennsylvania company.

Under the rules which were offered in evidence, there seems to be some attempt to lay down a different rule.

"Rule 328. They must report for duty at least thirty minutes before the time for starting, and assist in the shifting and making up of their trains.

"327. Firemen report to and receive their instructions from the road foreman of engines. They must obey the orders of the train master. When in the engine house they are under the direction of the foreman.

"329. They must obey the orders of the engineman in regard to the proper use of fuel, and manner of firing.

"330. They will assist in keeping a lookout on the track and if they see any obstruction or signals, they must instantly give the engineman notice.

Pennsylvania Co. v. Hickley.

"331. They must be familiar with the train rules that apply to the protection of their trains; they must understand the use of signals, and be prepared to use them promptly, as per rules Nos. 91, 93, 95 and 99."

Then it gives the rules in case of accidents, and times where they are going ahead and backing, etc., and the giving of notices.

"Rule 147. No general relation of superiority exists between conductors and enginemen, firemen, baggage-masters or brakemen; nor between enginemen and firemen or other train men; nor between yard-masters and enginemen, firemen or other train or yardmen. The duty of each employe is herein fully set forth, and, except as herein provided, neither employe has any superiority over the other."

That is to say, so far as they can lay down the law of the land, they have undertaken to say that the only thing a fireman is bound to do, as between him and the engineman, is to obey the orders of the engineman in the proper use of fuel and in the matter of firing; in all other things the engineer and the firemen are independent of each other. Whatever might be the finding of the court in regard to those matters, it is very certain that in this present case that ought not to be implied. There can be no question but that this train was sent out under the orders and in charge of the engineman; that he was the officer in charge of that whole train and had control of it; that as to its times of running and stopping, where it was to go and when it was to come, he had the whole direction. How far he had control of the section men and the men under him, it is not particular. For aught that appears from the testimony, they seem to have run as independent features, one having charge of the loading men and the other of the train. The fireman did turn a switch and coupled cars and coupled them together at Woodville, and we are very clear in our own minds in the conclusion that, so far as this train was concerned at this time, he was under the control of the engineman, and that the relation of superior officer and servant did exist as between these two persons.

Now stopping at this point a moment, for the purpose of disposing of a matter which arose on the trial of the case, I will turn to the testimony of Mr. Arndt, an insurance agent, who was put upon the stand to give testimony, and to whose testimony some objection was taken. It was not pressed very hard in the argument, but still it is raised and left before the court for its decision. The question was asked Mr. Arndt:

"What is your business?" A. "District agent for the Mutual Life Insurance Company of New York."

Q. "How long have you been in the insurance business?" A. "About three years, nearly."

Q. "Have you any tables in your possession or control, showing the probable duration of life?" A. "Yes, sir."

Q. "Have you them with you?" A. "Yes, sir."

Q. "Tell us what would be the probable duration of a man at thirty-one?

Mr. Tolerton: "I object to that testimony; I think it is incompetent; I merely desire to preserve my objection."

The Court: "We don't want to admit it unless it is proper."

Mr. Ford: "It is bearing upon the question of this man's financial loss and the pecuniary damages which he has sustained by this injury; there has been some testimony offered as to what he could earn in one year."

The Court: "I understand it has been admitted."

Mr. Tolerton: "It has been admitted in death cases; but I think, in cases like this, it is not proper testimony."

Thereupon the court allowed the question, but said: "I think it ought to be shown that these tables that he is reading from are recognized tables."

Thereupon the defendant, by its attorney, excepted to the admission of said testimony.

Witness: "They are recognized tables in life insurance companies."

The Court: Q. "Those tables are what?" A. "The Mutual Life Insurance Company's tables of New York. But other companies work upon the same."

Q. "How long have those tables been in use?" A. "It is the outcome of nearly fifty years experience of the Mutual Life."

Mr. Ford: Q. "By whom was that table prepared?" A. "By the actuaries, but I couldn't say whether by the actuaries of the Mutual Life or not."

The Court: "It is proper to say that that is simply one species of evidence; there is nothing conclusive about those, and the jury will have to take it into consideration themselves."

Mr. Ford: "Yes, sir."

Witness: "At the age of thirty-one the average life is 34–62 years."

And thereupon the defendant excepted to all the foregoing testimony.

It seems to us there was no error in the admission of that testimony. It is simply one method of ascertaining the probable life, and it is derived from the experience of an insurance company for nearly fifty years, the same as the Carlisle tables, which have been followed.

The testimony having been closed on the part of the parties, the court proceeded to charge the jury, gave a charge that is very full and very clear, and to which no exception was taken by either party, other than that the defendant asked that there might be two charges given in its behalf, which were refused by the court, and to which I shall refer further on.

It will be noticed that one ground that is alleged in the petition in regard to acts of negligence is, that the railroad company failed to furnish any conductor or any brakeman on this train; and it is claimed on behalf of the railroad company that at the time the train left Toledo, or that at the time it left Walbridge, this plaintiff below was aware of that fact, and that it was his duty at that time either to have made objection and refused to go with the train, or else he must be held to have accepted the situation and waived objection. And it was claimed also that the failure to furnish these men was not the immediate cause of the disaster. Now, upon that the court charged the jury very fully and in terms which were not excepted to.

"The rule upon that subject is this: If the servant of a railroad company has a full knowledge of any omission of duty or neglect on the part of the company, and with such knowledge, notwithstanding such knowledge, continues in the service of the company without making any objection, or without using any exertions to have the omission or neglect remedied, he thereby takes upon himself the risk of injury arising from such neglect, and waives the right to recover of the company for the injury. If the plaintiff in this case knew, at the time the engine left East

Toledo, on the morning of July 13, that the engine or train was not then equipped, and was not thereafter to be equipped during the performance of the work, with a conductor or with brakemen for the work to be done upon that day, and if he knew that his safety in the performance of his duty would be imperiled, or that the hazards of the service would be increased by the absence of the conductor or brakeman, and if with such knowledge, he went along with the engine without making any objection or complaint, then he cannot now complain of the absence of a conductor or brakeman. To prevent him from recovery for that reason, it must appear that he knew that the train could not be safely and properly managed without the conductor or brakeman; or, in other words, he must know that it was negligence on the part of the railroad company to fail to provide the engine and train with a conductor or brakeman.

" In this connection I will read to you and give to you as the law of the case two special requests or instructions that are made by the defendant:

" 1. The jury is instructed if they find from the evidence that the plaintiff, upon the day in question, proceeded on his train as fireman, knowing that there was no conductor or brakeman in charge of the train and that he would be required to perform the duties ordinarily performed by such conductor and brakeman, then he assumed all the extra risks incident to such employment and thereby waived any obligation on the part of the company to furnish a conductor and brakeman for such train.

" 2. If the plaintiff knew when he started on this train on the morning in question that there was no conductor and brakeman in charge of the same and that he would be required to do the duties of a brakeman, he had a right to abandon the service and refuse to proceed without such conductor and brakeman, and his refusal to do so and his election to proceed without such conductor and brakeman was a waiver on his part of any obligations of the company in that regard, and the plaintiff in such case would not be entitled to recover on that account. It is a question of fact for you to determine from all the evidence, whether the plaintiff knew that he would be required to perform the duties of a brakeman that day; so that under the first alleged ground of negligence there are these questions for you to determine:

" 1. Was the train in question supplied with an adequate force of employes?

" 2. If the force of employes with which the train was furnished was insufficient or inadequate, was it the proximate cause of the plaintiff's injury, or did it proximately contribute to the plaintiff's injury?

" 3. Did the plaintiff by his conduct assume the risk of injury resulting from this cause?"

Now in regard to this question, it was contended on behalf of the railroad company, that C. J. & M. R. R. v. Marshall, cases decided by the Supreme Court without report, 23 W. L. B., 285, is decisive of this case, that is as a matter of law, it ends this case. Now in that case, the conductor of the train, living at some point on the road, I think Van Wert, on the train at Cincinnati, was offered two brakemen. He rejected one of them, didn't want him, said he was incompetent. The company had no other brakemen present and couldn't furnish him with another brakeman in the place of the one whom he said was incompetent, and hereupon he started out with one brakeman. About 3 o'clock

in the morning, it being very dark, they stopped to put some cars out at some point on a side track. In the performance of that duty the train was broken in two, and the engine with a part of the cars was started forward and then was backed in on a side track and the requisite number of cars detached and the locomotive started ahead with the remaining cars attached to it onto the main track for the purpose of backing down to the cars on the main track. The conductor directed them to back down, and he himself stepped in for the purpose of coupling the train. They were on a little grade and the train came down rapidly, and as they came down to the cars which was standing, they came with such rapidity that he was caught and was killed. An action was brought against the railroad company, and the petition was demurred to in the common pleas and the demurrer was sustained, and the case was taken to the circuit court, which reversed the judgment of the common pleas, and the case was taken to the Supreme Court and that court reversed the judgment of the circuit court. Now there were two or three defenses made. The first was, that there was no negligence on the part of the railroad company; that they furnished all the men they had. The second defense was, that the conductor himself was guilty of contributory negligence. The case was heard by the Supreme Court, but was never reported, except among cases decided without report, where it appears that the judgment of the circuit court was reversed by the judgment of the Supreme Court, but no reason is given or the ground upon which they based their decision. But it will be noticed that the party performing that work was the conductor of the train himself.

In this case, the man was acting, as we have held, under the orders of a superior officer. If a brakeman had been sent in there by the conductor, we imagine that a very different question would have arisen, and one in which the decision would have been different in the Supreme Court. At any rate, it is a question of mixed law and fact and should be left to the jury.

In Northern Pacific Railroad Co. v. Mares, 123 U. S., 710, is a decision directly in point upon that question, the opinion of the Supreme Court of the United States having been given by Mr. Justice Matthews. In that case an engineer having backed his locomotive so suddenly, and it would almost seem intentionally, as to knock the brakeman or persons on the car to control it, off of the car, he was knocked off and was thrown across the track and very badly injured. The engineer was a pretty high-tempered fellow, and they had had some words a little while before, and it was not long before the brakeman was on the track with the train over him. I should think there were about thirty requests in that case, making it a question of law, and the Supreme Court there held that it was a question to be submitted to the jury, without any doubt, as to whether the party was guilty of negligence in standing in the position in which he did upon the car for the purpose of managing that brake, and they confirmed the decision of the court below, in favor of the plaintiff and against the defendant. And this is authority also upon another point, and that is, whether the defendant was guilty of negligence in remaining in the employ of the company. They held that was a question also to be submitted to the jury, as to whether under all the circumstances, he was guilty. It was a question here as to whether he

Pennsylvania Co. v. Hickley.

knew how far he would be used as a brakeman, and that was a question which was properly left to the jury.

Now, without discussing this matter farther, our conclusion is: that there was negligence on the part of the railroad company in sending this train out without somebody to assist in giving the signals protecting the parties at the time they were attempting to unite the train for the purpose of coupling.

We hold also, that the engineer had control of the fireman, and that the fireman was to obey his orders, and that in what he did when he attempted to couple these cars, he did in obedience to the orders of the engineer and in the line of his duty. The train was a wild train, and was perhaps under wild management, at least it was not equipped and did not go out as a train ought to go.

Third, we are of opinion that the question as to whether the defendant below was guilty of negligence, was properly left to the jury; and that upon all of these questions the verdict and finding of the jury is properly sustained by the evidence in the case and by the law.

The case is no doubt a close one; it is one that has occupied a good deal of our time and has been discussed in all its aspects in the consultation room; but, after a very fair and full investigation of the case, we are of opinion that it is our duty to let this judgment stand, and it will therefore be affirmed, without any penalty.

I should say that there were two requests to charge, made by the defendant, as follows:

"In all acts performed by Cayia, the engineer of said train, as engineer, he was a fellow servant of the plaintiff while acting as brakeman, and if the plaintiff's injuries were caused by the negligence of such engineer in backing the train, then the defendant is not responsible for injuries received by the plaintiff through such negligence of the engineer.

"Cayia, the engineer, and the plaintiff were fellow servants in the operation of said train, and the defendant is not responsible for injuries received from the negligence of said engineer in handling the train."

It follows from what I have already said, that these requests and and others of the same tenor should have been refused, as they were.